IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AHBINESH RAY,<br><br>        Plaintiff,<br>v.<br><br>WALMART INC.,<br><br>        Defendant. | Case No.: 3:23-cv-01308-AR<br><br>OPINION AND ORDER |

**Adrienne Nelson, District Judge**

        United States Magistrate Judge Jeff Armistead issued a Findings and Recommendation ("F&R") in this case on April 29, 2024. Judge Armistead recommended that this Court grant in part and deny in part plaintiff's Motion to Strike, ECF [17], and grant defendant's Motion to Dismiss, ECF [12]. Plaintiff timely filed objections, to which defendant responded.

        A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). If any party files objections to a magistrate judge's proposed findings and recommendations, "the court shall make a de novo determination of those portions of the report." *Id.* If no objections are filed, then no standard of review applies. However, further review by the district court *sua sponte* is not prohibited. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Advisory Committee notes to Federal Rule of Civil Procedure 72(b) recommend that unobjected to proposed findings and recommendations be reviewed for "clear error on the face of the record." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

## DISCUSSION

        Plaintiff Ahbinesh Ray brings this action against defendant Walmart, Inc., alleging intentional infliction of emotion distress ("IIED") and discrimination under 42 U.S.C. § 2000a. The relevant facts, derived from the complaint, are set forth in the F&R. Put succinctly, plaintiff purchased items at a

1

Walmart store, forgot the items in the store, and returned to the store to retrieve the items. He was unable to obtain permission to obtain the items and decided to purchase one item again. While leaving the store, plaintiff encountered the store manager. The manager said, "Oh, it's you the drama person," and stated that plaintiff looked like a terrorist "apparently" because of his baseball cap, hooded sweatshirt, and face mask. Am. Compl, ECF [11], ¶ 5. Plaintiff asked the manager for permission to take his previously purchased items. The manager told him to leave the store without them. When plaintiff refused to leave without the items, the manager called security. An armed security guard grabbed plaintiff's right arm, twisted it behind his back, and physically forced him out of the store without a refund. Plaintiff was then given a notice of exclusion from the store.

Defendant moved to dismiss plaintiff's IIED claim under Federal Rule of Civil Procedure 12(b)(6), and plaintiff moved to strike the declaration attached in support of defendant's motion. The F&R found that plaintiff had not stated a claim for relief on his IIED claim, and that the declaration contained two documents that were properly subject to judicial notice, and two that were improper for a motion to dismiss.

Plaintiff does not object to the F&R's recommendation that his motion to strike be granted in part and denied in part. Finding no clear error, the Court adopts this recommendation.

Plaintiff objects to the following findings on defendant's motion to dismiss: (1) the complaint did not sufficiently allege intent; (2) there is no special relationship between a retailer and customer; and (3) the store manager's statements and actions did not allege conduct that was an extraordinary transgression outside the boundaries of socially tolerable conduct.

To state a claim for relief on an IIED claim, a plaintiff must show that "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543, 901 P.2d 841 (1995) (internal quotation marks omitted).

2

A.      **Allegation of Intent**

Plaintiff's first objection relates to the F&R's finding that the complaint contains only a "simple recitation" of the first element of an IIED claim, and "lacks sufficient allegations of underlying facts to permit Walmart to defend itself." F&R, ECF [23], at 7. Plaintiff argues that it is not possible to allege intent more adequately than what is stated in the complaint, and that the allegation is supported by the underlying facts in the rest of the complaint.

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, the complaint must include more than unsupported accusations of injury or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Starr v. Baca*, 652 F.3d 1216 ("[A]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying fact to give fair notice and to enable the opposing party to defend itself effectively."). The complaint alleges, in relevant part, that "[d]efendant's actions as alleged were intentional and insulting, and were intended to and did cause plaintiff severe emotional distress and humiliation and were a transgression of the bounds of socially tolerable behavior[.]" Am. Compl. ¶ 7. This is sufficient to meet the pleading standard for the intent element.

Although the F&R found this allegation to be a "formulaic recitation of" the first element, the Court respectfully disagrees. Viewed in the context of the factual allegations, the complaint gives defendant fair notice of the actions that plaintiff alleges were intended to cause him severe emotional distress. Specifically, stating that plaintiff looked like a terrorist, physically having plaintiff removed by an armed security guard, and refusing to allow plaintiff to obtain purchased items that he had accidentally left in the store, or otherwise issue a refund, are actions that could plausibly support an intent to cause emotional distress. *Id.* ¶¶ 5-6. Detailed factual allegations are not necessary, and "proof of intent is often indirect." *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008). Indeed, similar allegations have been found sufficient to meet the pleading standard for intent in an IIED claim. *See Upchurch v. Multnomah*

3

*Univ.*, No. 3:19-cv-00850-AC, 2021 WL 6066283, at *4 (D. Or. Dec. 7, 2021) (finding allegation that defendant "acted intentionally and 'knew with substantial certainty' that his conduct would cause [plaintiff] severe emotional distress" sufficient to plead first element of IIED claim); *Conroy v. Mewshaw*, No. 3:21-cv-298-SB, 2022 WL 2981453, at *4 (D. Or. July 28, 2022) (finding factual allegations sufficient to support plaintiff's allegation of intent). Plaintiff has adequately pled the intent element of his IIED claim.

**B.    Special Relationship**

Plaintiff also argues that the F&R erred by finding that no special relationship exists between a retailer and a customer. In an IIED claim, "[t]he relationship between the parties has particular bearing on potential characterization of the conduct as extreme or outrageous." *Delaney v. Clifton*, 180 Or. App. 119, 130, 41 P.3d 1099, *rev. den.*, 334 Or. 631 (2002). Generally, a plaintiff must allege that the defendant's "position or role *vis-à-vis*" the plaintiff was one that "imposes on the defendant a greater obligation to refrain from subjecting [the plaintiff] to abuse, fright, or shock than would be true in arm's-length encounters among strangers." *Id.* Examples of special relationships include "employer-employee, physician-patient, counselor-client, landlord-tenant, debtor-creditor or government officer-citizen[.]" *House*, 218 Or. App. at 360.

The F&R found plaintiff's argument that a retailer-consumer relationship constitutes a special relationship to be an "undeveloped and authority-free contention." F&R 8. It found that no special relationship existed because such a relationship was "the definition of an arm's-length encounter between strangers." *Id.* However, plaintiff maintains that a special relationship exists in this case because defendant had control over plaintiff's right to shop in its store and the conditions of his shopping. Plaintiff acknowledges an absence of Oregon case law regarding whether a retailer-customer relationship constitutes a special relationship in the IIED context but now points to *Williams v. Tri-Met*, 153 Or. App. 686, 958 P.2d 202 (1998), as support.

In that case, the plaintiff was a disabled individual attempting to board a bus with an assistance dog. *Id.* at 688. The bus driver insisted that the dog needed a photo identification card before it would be permitted to accompany plaintiff on the bus, repeatedly questioned why the plaintiff needed an

4

assistance dog, stated that plaintiff did not appear disabled and was merely trying to pay a reduced fee, and, upon reaching the plaintiff's destination, told the plaintiff that she could not reboard any transit vehicle he was driving. *Id.* The plaintiff brought a claim for intentional infliction of emotional distress against the bus driver, and the trial court granted the defendant's motion for judgment on the pleadings. *Id.*

The Oregon Court of Appeals found that a special relationship did exist between the bus driver and the plaintiff. *Id.* at 693. The court emphasized that "[a]s a provider of public transportation, the relationship [between the bus driver and the plaintiff] is a special one within our society, as evidenced by the extensive fabric of laws that seek to secure full and effective access to publicly available goods and services for disabled persons." *Id.* Further, the court found that the isolated nature of the incident did not diminish its outrageousness because of "the bus driver's status as someone who could withhold or burden plaintiff's access to public transportation, his threat to do so in the future, and the presence of other passengers at the time of the encounter." *Id.* at 694.

The factual differences between *Williams* and the present case are notable. In *Williams*, the court focused heavily on the fact that the plaintiff was disabled and that the bus driver's conduct was related to the plaintiff's disability. Indeed, the court emphasized that "[f]undamental to our conclusion is plaintiff's disabled status. . . . As pleaded in the complaint, the driver's conduct could be considered harassment of a kind that historically has been directed to disabled individuals in an effort to ostracize and humiliate them." *Id.* at 693. Further, the court's finding that the bus driver and the plaintiff had a special relationship was preceded by a detailed discussion of the public accommodation and anti-discrimination laws securing the right to access to publicly available goods and services for disabled persons. *Id.* at 690-92. Put another way, the bus driver had a particular obligation to not discriminate against the plaintiff on the basis of her protected class status.

The specific nature of the conduct in *Williams* established the existence of a special relationship—however, it does not create a categorical rule that any entity offering public goods or services has a special relationship with every customer patronizing the business. In fact, numerous cases from this district in situations more analogous to the present case have found that no special relationship existed

5

between a business and customer. *See Giulio v. BV CenterCal, LLC*, 815 F. Supp. 2d 1162, 1181-82 (D. Or. 2011) (finding no special relationship between mall visitors and mall owner); *Blocker v. Wells Fargo Bank*, No. CV 08-1196-PK, 2010 WL 6403721, at *11 (D. Or. Nov. 23, 2010) (finding no special relationship between bank customer and bank); *Sellick v. Denny's Inc.*, 884 F. Supp. 388, 391 (D. Or. 1995) (finding no special relationship between restaurant and prospective customer). As alleged, plaintiff has not adequately pled facts supporting the existence of a special relationship between him and defendant.

**C.     Outrageous Conduct**

Finally, plaintiff objects to the F&R's finding that the store manager's statements and actions do not rise to the level of an extraordinary transgression outside the boundaries of socially tolerable conduct. Whether conduct is outrageous is a fact-specific inquiry, based on the totality of the circumstances. *Lathrope-Olson v. Dept. of Transportation*, 128 Or. App. 405, 408, 876 P.2d 345 (1994). "[T]emporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life," *Hetfeld v. Bostwick*, 136 Or. App. 305, 308, 901 P.2d 986 (1995), such as conduct that is "rude, boorish, tyrannical, churlish, and mean," *Patton v. J.C. Penney Co.*, 301 Or. 117, 124, 719 P.2d 854, 858 (1986), is insufficient to meet this standard. The outrageousness of conduct may be affected by "whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual," and "[t]he setting in which the allegedly outrageous conduct occurs[.]" *Rosenthal v. Erven*, 172 Or. App. 20, 24, 17 P.3d 558 (2001).

Plaintiff argues that the F&R erred by failing to state the precise language of the insult allegedly levied at plaintiff when determining the conduct was not outrageous. In plaintiff's view, the store manager's statement that plaintiff looked like a terrorist, in combination with having plaintiff physically removed from the store, exceeded the bounds of socially tolerable behavior because this conduct could infer that the store manager's comment was based on plaintiff's physical appearance.

Assuming the allegations in the complaint to be true, plaintiff has not sufficiently alleged conduct that could reasonably be perceived as an extraordinary transgression outside the boundaries of socially tolerable conduct. Although this incident occurred in a public setting, plaintiff has not alleged facts

indicating that the store manager's conduct was undertaken for an ulterior motive or could otherwise reasonably be perceived as outrageous. Alleging that the store manager's comment was "apparently" based on plaintiff's clothing is insufficient to transform the conduct from ordinary rudeness to outrageous. As stated by the F&R, the facts "evince poor customer service at best and offensive conduct at worst," neither of which is sufficient to meet the standard for outrageous conduct necessary to successfully plead an IIED claim. F&R 8.

## CONCLUSION

Upon review, the Court agrees with Judge Armistead's recommendations, but MODIFIES the F&R, ECF [23], with regard to the analysis of the intent element. Plaintiff's Motion to Strike, ECF [17], is GRANTED in part and DENIED in part. Defendant's Motion to Dismiss, ECF [12], is GRANTED, and Count 1 of the Amended Complaint, ECF [11], is dismissed without prejudice.

IT IS SO ORDERED.

DATED this 15th day of July, 2024.

_____
Adrienne Nelson
United States District Judge